UNITED STATES *v.* WERTHEIMER & Co. (No. 958).[1]

1. "STRANDS" AND "CORDS."
     It is plain in the record that there was a failure here to show that "strands" and "cords" as applied to gloves have a recognized commercial meaning.
2. GLOVES WITH NOT MORE THAN THREE THREADS OR STRANDS.
     "Stitched or embroidered with not more than three single strands or cords" means the number of threads employed in stitching or embroidering the decoration on the backs of the gloves and not the lines or rows of decoration produced. The Paris point gloves of the importation are not stitched with more than three single strands and are not subject to the additional duty prescribed by paragraph 459, tariff act of 1909.

United States Court of Customs Appeals, May 31, 1913.

APPEAL from Board of United States General Appraisers, Abstract 29215 (T. D. 32681).
[Affirmed.]
*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel), for the United States.
*Curie, Smith & Maxwell* (*Thomas M. Lane* of counsel) for appellees.

     Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

The collector of customs held that certain leather gloves for women, imported at the port of New York, were stitched and embroidered with more than three single strands or cords and therefore subjected them to the additional duty of 40 cents for each dozen pairs provided for by paragraph 459 of the tariff act of 1909, which paragraph, in so far as pertinent, reads as follows:

459. * * * On all gloves stitched or embroidered, with more than three single strands or cords, forty cents per dozen pairs.

The importers protested that the gloves were not stitched or embroidered with more than three single strands or cords and that therefore the merchandise was not subject to the additional duty exacted. The Board of General Appraisers sustained the protest and the Government appealed.

The ornamentation of gloves with more than three single strands or cords was first provided for by paragraph 458 of the tariff act of

---

[1] Reported in T. D. 33528 (24 Treas. Dec., 991).

1890, and ever since that time the meaning which should be given to the words "strands" and "cords" as used by the lawmakers has been a fruitful source of controversy between the Government and importers of gloves.

In Wertheimer & Co.'s protest (T. D. 10910) the board had before it an embroidered glove which was described as having two strands, worked about three cords, made by stitching the material into a long, narrow, raised effect. These gloves were held to have more than *three strands of embroidery.* The principle of this decision was in effect affirmed by the Circuit Court in Wertheimer *v.* United States (68 Fed., 186) and again affirmed by the Circuit Court of Appeals in Wertheimer *v.* United States (73 Fed., 296). In the latter case the court said, among other things: "As the gloves in controversy have three decorations, each of which consists of more than a single strand or cord, they were properly subjected to the additional duty." What this glove really was is hard to determine from the description. It is fairly evident, however, that the Circuit Court of Appeals regarded each point of the glove as a decoration and each line of embroidery in the point as a strand. Strands and cords were apparently used by the court as synonymous terms, and the raised effect was evidently not considered as a cord. By virtue of this decision a three-point glove with more than a single line of embroidery in each point became a glove embroidered with more than three single strands or cords.

In Wertheimer *v.* United States (77 Fed., 600), Wheeler, Judge, evidently did not consider the raised effect a cord, and therefore disagreed with the definition of "cord" enunciated by the board in T. D. 10910. In the Wertheimer case, just mentioned, it was held that "two rows of single-cord embroidery between three lines or points of the material, raised up and sewed through and through," were not embroidered gloves with more than three single strands or cords. This decision was at outs with T. D. 10910, Wertheimer *v.* United States (68 Fed., 186) and Wertheimer *v.* United States (73 Fed., 296).

In Marshall Field & Co.'s protest (T. D. 12103) the board ruled on the classification of leather gloves with three smooth straight cords raised on the back, on each side of which cords were several lines of stitching, known as Orleans or Paris point. The collector classified these gloves as embroidered gloves, subject to the additional duty prescribed by paragraph 458, but the board held that neither the cord nor the stitching was embroidery. Following this decision, paragraph 458 of the tariff act of 1890, which read, "on all embroidered gloves, with more than three single strands or cords, 50 cents per dozen pairs," was by paragraph 445 of the tariff act of

1897 amended so as to read, "on all gloves stitched or embroidered, with more than three single strands or cords, 40 cents per dozen pairs." Under paragraph 445 the board held, in the protest of H. Robinson (T. D. 19945), that gloves with three rows of embroidery on the back, having the appearance of *3-plait crochet work* and produced by the needle with only *one cord or strand of thread*, as shown by the stitching on the inside of the glove, were not stitched or embroidered with more than three strands or cords. Here cord and strand were used by the board in the sense of thread, and it followed of course that "strand" no longer meant necessarily a line of stitching and neither did "cord" refer to the raised effect. The classification in this case was, therefore, made to turn not on the lines of decoration, but on the number of threads which made them. This decision was affirmed by Wheeler, District Judge, in United States *v.* Robinson (124 Fed., 1013), in which it was said:

> These are gloves with three rows of embroidery, each of a single cord, but passing more than once throughout the decoration * * *. The addition is to cords and not to turns or directions of the same cord. Here are but three cords.

Referring to the gloves of the Wertheimer case in 68 Fed., 186, the court said:

> The gloves "had more than three single strands or cords in the embroidery," while these have not.

That statement was correct in so far as the finding of the board was concerned, but as that finding was predicated on the premise that strands and cords meant the lines of decoration and not the number of threads which produced the decoration, the learned judge's decision, in its effect, can hardly be viewed in any other light than a disaffirmance of the theory adopted in the case to which he refers. The Attorney General advised that no further proceedings would be directed, and no appeal was taken from the decision of Judge Wheeler, just cited. The Treasury Department, in T. D. 21996, notified the collector of customs of this state of the matter and authorized a refund of the excess duties exacted. So far as we can discover there was no further litigation as to the classification of gloves stitched or embroidered with more than three single strands or cords until 1904. In February of that year gloves with three single parallel lines or rows of stitching or embroidering were subjected by the collector of customs at New York to the additional duty. The importers protested, and on the hearing trade testimony was introduced by the Government showing, first, that a cord was an embellishment on the back of a glove produced by creasing the leather longitudinally and then oversewing it with a silk thread; second, that a strand was a *row* of embroidery; third, that a cord was stitched and a strand embroidered. The board held that

"strands" and "cords" as used in paragraph 445 did not mean strands or cords of thread, but the line of "stitching producing a cord or a strand of embroidery." (T. D. 25038.) This decision was to all intents and purposes a return to the doctrine laid down in the first cases decided and ignored the fact that those cases had been overruled by the board itself in T. D. 19945 and by the Circuit Court in United States *v.* Robinson (124 Fed., 1013).

That meant, of course, renewed litigation, and a new case was presented in which the board asserted its adhesion to the doctrine announced in T. D. 25038 and overruled the importers' protests. Protest of Passavant & Co., Abstract 8396 (T. D. 26753). The Passavant case was appealed to the Circuit Court, and Platt, Judge, distinctly held that the board should have followed the rule prescribed by T. D. 19945 and United States *v.* Robinson, and finally accepted by the Government. Accordingly the decision of the board was reversed. Trefousse *v.* United States; Passavant *v.* United States (144 Fed., 708); affirmed by the Circuit Court of Appeals (154 Fed., 1005). The Trefousse case was followed by United States *v.* La Fetra (172 Fed., 297), in which case the Circuit Court announced in effect that the Government having failed to make out a trade understanding of "strands" and "cords" at variance with the meaning fixed for those terms by the Trefousse case, the decision there must stand. The gloves in the La Fetra case had nine separate rows of stitching and were held not to be stitched or embroidered with more than three single strands or cords. An appeal from the decision in the La Fetra case was taken to the Circuit Court of Appeals, which decided that the Government had failed to make out a commercial designation and that the meaning given by the Trefousse case to "single strand" would not be disturbed, although if it were a matter of novel impression more weight might have been given to the Government's contention.

Prior to the passage of the tariff act of 1909, and as a result of this prolonged litigation, it was therefore finally determined, first, that "stitched or embroidered with not more than three single strands or cords" meant the number of threads employed in stitching or embroidering the decoration on the backs of the gloves and not the lines or rows of decoration produced; and, second, that at the time the La Fetra case was finally disposed of that meaning had not been varied by the general, definite, and uniform understanding of the trade. With that judicial determination before it, Congress definitely refused to amend paragraph 445 of the tariff act of 1897 so as to make the rows or lines of stitching the test for additional duty and reenacted paragraph 445 of the act of 1897 as paragraph 459 of the tariff act of 1909. Under the circumstances this court does not feel at liberty to give to the provision here under consideration an inter-

pretation different from that finally put upon it after such extended litigation. Of course, prior to the passage of the present tariff act, the trade may have succeeded in giving to "strands" and "cords" the signification so long contended for by the Government, but unless it has we feel bound to accept the meaning which after so much litigation was finally put upon the provision here in controversy, especially as that meaning seems to have met with the approval of Congress. United States *v.* Germain (3 Ct. Cust. Appls., 321; T. D. 32620).

This appeal, therefore, resolves itself into the determination of two questions: First, Was a commercial designation proved by the Government? Second, Were the gloves stitched or embroidered with more than three threads or strands?

Eight witnesses were produced by the Government for the purpose of establishing commercial designation. Six of them declared that in the trade strands or cords meant rows of stitching or embroidery, and that "strands," "cords," and "rows" were synonymous terms. These six witnesses further declared that the Paris point glove in dispute had three points, five rows of stitching to the point, or 15 rows in all, and that such a glove was known in the trade as a 15-strand or 15-row glove. The witness Baker—one of these six—however, stated that he had never heard of a glove being spoken of as a 15-strand glove until the week immediately preceding the giving of his testimony. The witness White, another of the six witnesses, testified that Exhibit 1 was what was known as a 15-row back, and that he had never heard of the term 15-row back being used with reference to a glove prior to the conference of the witnesses, and that the expression "stitched or embroidered with more than three strands or cords" was not a trade term. One of the two remaining witnesses, Goessling, testified that there was a good deal of difference in the trade as to what was meant by "strands" and "cords;" that some called it a strand, some a cord, and some a row, and that there was no uniformity in the trade with reference to these designations. Belding, the eighth witness, could qualify only as to the use of the terms in the manufacturing trade and was not permitted to give any testimony as to commercial designation. Testimony as to the meaning of "strands" and "cords" among manufacturers and testimony as to the relative cost of decorating gloves was properly excluded under the facts disclosed by the record. The refusal to allow witnesses to testify as to the number of strands in the glove was proper in view of the fact that any count of strands was wholly dependent upon whether the word "strand" meant rows or threads.

As against the testimony of the Government the importers produced eight witnesses who flatly denied that the terms "strands" and "cords" were trade terms, and some of them asserted that they

had never heard them used at all, except in the customhouse. The importers' witnesses were practically agreed that the style of a glove was determined by the number of rows in each point and not by strands or cords.

With this as the state of the record it is very plain that no commercial designation was made out on the part of the Government, and therefore the only other point demanding consideration is, Were the gloves stitched or embroidered with more than three threads or strands within the ordinary meaning of those terms?

The record shows, without contradiction, that five classes of machines are used in the ornamentation of gloves and that the style of decoration is determined by the particular machine which has been employed in doing the work. For one kind of ornamentation a machine with a single needle and thread and carrying no bobbin or bobbin thread is employed; for another, a machine is used which is equipped with a needle and bobbin and two threads, one for the needle and one for the bobbin. A third variety of ornamentation is accomplished by a machine furnished with two needles and a bobbin and three threads, two for the needles and one for the bobbin, while a fourth and a fifth class of decoration is evolved by machines provided, respectively, with three needles and a bobbin and four needles and a bobbin and the appropriate number of threads.

We think that when Congress laid an additional duty on gloves stitched or embroidered with more than three strands it had in contemplation the methods of manufacture and the machines actually employed by the industry in stitching and embroidering the backs of gloves and that it was the legislative intention that the question of additional duty should be determined by the number of threads really employed in doing the stitching or embroidering rather than by the number of rows or lines of decoration actually stitched. It appears from the testimony that the Paris point gloves here in dispute are ornamented on the back by a machine carrying two needles and a bobbin and employing not more than three threads. They are therefore not stitched with more than three single strands and are not, in our opinion, subject to the additional duty prescribed by paragraph 459. Whether the word "cord" was used in paragraph 459 in the sense of thread or to designate the raised effect produced by creasing and stitching the leather of a glove longitudinally into what is sometimes called a cord we do not pretend to say. If it was used as synonymous with thread, the gloves are not stitched with more than three cords. If it means the raised effect produced by stitching, it is plain from an examination of the exhibit that there are not more than three ribs or corded effects on the back of the glove.

The decision of the Board of General Appraisers is *affirmed.*